IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

**VICKI L. LAWSON,**

    **Plaintiff,**

**v.**                                                     **CIVIL ACTION NO. 1:07-00264**

**UNUM LIFE INSURANCE COMPANY**
**OF AMERICA,**

    **Defendant.**

**MEMORANDUM OPINION**

Pending before the court are the cross motions for summary judgment filed by both parties (Doc. Nos. 13, 15), and the plaintiff's Motion to Extend Time to File Motion for Summary Judgment (Doc. No. 17).  Having reviewed the record and applicable law, for the reasons outlined below, the court grants the defendant's motion for summary judgment (Doc. No. 13), grants the plaintiff's motion to extend filing deadline (Doc. No. 17), and denies the plaintiff's motion for summary judgment (Doc. No. 15).

**I.   Background**

**A.   The Plan**

The plaintiff, Vicki L. Lawson, was employed by Princeton Community Hospital ("Hospital") as a telephone operator from September 25, 1977 to February 8, 2005.  (U.A.C.L. at 1179.)  Her

primary responsibility was to process incoming telephone calls to the Hospital switch board. (Id. at 1166.) In addition to her salary, the Hospital provided Ms. Lawson with long-term disability insurance which it purchased from UNUM Life Insurance Company of America ("UNUM"). (Id. at 1071.)

This long-term disability plan, Policy No. 580366, ("Plan") is administered by UNUM and provides monthly disability benefits equal to sixty-six and two-thirds percent of a participant's monthly earnings. (Id. at 1086.) The benefits are divided into two tiers: "own occupation benefits" and "any occupation benefits." (Id.)

To be eligible to receive the first tier of benefits, "own occupation benefits," a participant must be continuously disabled for the "elimination period," which is defined as the later of "180 days; or the date [the participant's] accumulated sick leave or salary continuation payments end." (Id.) A participant is disabled when UNUM determines that "[he or she] is limited from performing the material and substantial duties of [his or her] regular occupation due to [his or her] sickness or injury . . . ." (Id.) Payments made under this tier of benefits are limited to a twenty-four month period. (Id.)

After the twenty-four month period has elapsed and "own occupation benefits" have therefore been exhausted, the participant may be eligible to receive second tier, "any

occupation benefits," which are payable for as long as the disability continues or until the participant reaches Social Security Age.  (Id. at 1086, 1080.)  To receive "any occupation benefits" UNUM must determine that due to the same sickness or injury the participant is unable to perform the duties of any gainful occupation for which he or she is fitted by education, training, or experience.  (Id.)  Again, the discretionary authority to determine a participant's eligibility for benefits is reserved by the Plan to UNUM.  (Id. at 1090.)

**B.    Medical History**

Ms. Lawson has a long medical history involving neck and shoulder pain.  Starting on March 28, 1994, William A. Merva, M.D., a neurologist practicing in Princeton, West Virginia, diagnosed the neck pain Ms. Lawson was experiencing as possibly stemming from chronic muscle contraction headaches.  (Id. at 873.)  Dr. William C. Bird, Ms. Lawson's family physician, came to a similar conclusion on January 10, 1997, stating that Ms. Lawson's "chronic neck pain and headaches [are] apparently secondary to muscle tension."  (Id. at 961.)  In subsequent neurological examinations, Dr. Merva identified paravertebral muscle spasms and mild arthritic changes but found no other neurological defects.  (Id. at 774, 873, 898, 900-03, 907-08,

924.) Ms. Lawson's shoulder and neck pain persisted for the next decade.[1]

On February 9, 2005, Ms. Lawson was seen by Dr. Bird for "nerves and stress." (Id. at 970.) Dr. Bird's diagnosis was anxiety and depression. (Id.) He prescribed her Wellbutrin XL (150mg). (Id.) She did not return to work. (Id. at 1179.) Over the course of the next few months, Ms. Lawson was seen by Dr. Bird several times for similar complaints, including neck pain, and each visit Dr. Bird adjusted her medications. (Id. at 970-72.) On April 26, 2005, Ms. Lawson was seen by Dr. Merva who diagnosed her with "probable agrophobia" and suggested psychiatric evaluation. (Id. at 844.) A week later on May 2, 2005, Dr. Bird also counseled her to get psychiatric treatment. (Id. at 974.) Ms. Lawson was unreceptive to counseling. (Id.)

On July 1, 2005, Dr. Bird addressed Ms. Lawson's shoulder and neck pain and continued her on Prozac. (Id. at 976.) The result was a diagnosis of "cervical arthritis [and] parasthesias secondary to radicular symptoms from the neck." (Id.) This diagnosis was consistent with the diagnoses of March 9, 2005

---

[1] During this time, Ms. Lawson's medical records indicate that she was prescribed a myriad of psychoactive medications, including Prozac, Amitriptyline, Imipramine, Effexor, and Neurontin. (Id. at 882, 884, 887.) It is not clear whether these medications were prescribed to treat shoulder and neck pain or anxiety and depression. Although Ms. Lawson was not prescribed any narcotic pain killers, on numerous occasions she was given Flexiril, Robaxin, Skelaxin, and Norflex for muscle spasms.

(cervical and lumbar arthritis), March 18, 2005 (same), and April 1, 2005 (cervical strain).  (Id. at 971-73.)

**C. The Claim**

Ms. Lawson filed for disability on August 11, 2005.  (Id. at 1107-52.)  In the attending-physician statement, attached to the claim form, Dr. Bird opined that Ms. Lawson's diagnoses were "cervical disorder, myalgias, arthritis of the spine, and anxiety" and stated that the patient should not lift or sit for long hours and should avoid stressful situations.  (Id. at 1153.)  A day later, on August 12, 2005, Dr. Bird penned a letter explaining that Ms. Lawson "is a lady who has severe cervical arthritis which leads to parathesias and radicular symptoms including numbness, burning, and weakness in the upper extremities" and opining that "she is most likely totally disabled . . . ."  (Id. at 945.)

UNUM referred Ms. Lawson's claim to Patricia Ward, an UNUM in-house registered nurse.  (Id. at 815.)  In her report dated September 7, 2005, Ms. Ward noted that since February 9, 2005, the time at which Ms. Lawson stopped working, her attending physicians focused more on her psychological symptoms than on her physical symptoms.  (Id. at 814.)  Ms. Ward also concluded that the attending-physician statement drafted by Dr. Bird did not explain a pathological basis for why Ms. Lawson could not perform the material and substantial duties of her regular occupation.

(Id.)  Ms. Ward then forwarded the claim to Martha Wyman, a behavioral health professional.  (Id. at 794.)

Ms. Wyman concluded that although Ms. Lawson "may have experienced symptoms affecting her ability to function, there is no support for psychiatric impairment, beyond May 2, 2005."  (Id. at 790.)  Ms. Wyman based her conclusion on the following facts: Ms. Lawson did not seek further psychiatric evaluation as recommended by both treating physicians; Ms. Lawson's medical records did not contain any post May 2, 2005, treatment notes suggesting acute psychiatric symptoms; and Dr. Bird's August 12, 2005, letter did not identify psychiatric conditions as contributing to Ms. Lawson's impairment.  (Id. at 790-93.)  Ms. Wyman then referred the claim to Dr. Barry C. Gendron, a physical medicine physician employed by UNUM.  (Id. at 770.)

After reviewing the entire file and communicating with Dr. Bird, Dr. Gendron concluded that "there does not appear to be support for any acutely impairing condition beyond May 2, 2005." (Id. at 770.)  The basis of Dr. Gendron's decision was that there was no objective support for Dr. Bird's opinion that the claimant suffered from severe neck pain and that "the medical records support the fact that the claimant left work due to psychologic versus physical issues."  (Id.)  Dr. Gendron recommended a formal independent medical evaluation with a physician specializing in physical medicine and rehabilitation.  (Id. at 769.)

6

The independent medical evaluation was performed by Clifford Carlson, M.D., who concluded that although Ms. Lawson suffered from chronic cervical sprain/strain syndrome, she could perform her previous job as a telephone operator. (Id. at 700.) Particularly, Dr. Carlson noted that "[t]here is no evidence of severe arthritis . . . [and] no evidence of range of motion restrictions." (Id.)

On November 23, 2005, UNUM denied Ms. Lawson's claim having found that, from a physical perspective, there was "no medical support for restrictions and limitations that would prevent you from performing your occupation," and that, from a psychological perspective, the medically supported behavioral restrictions did not extend beyond the elimination period. (Id. at 653.) Ms. Lawson appealed. (Id. at 622, 626, 632-33.)

UNUM referred the appeal to different personnel for review, obtained updated medical information from Dr. Bird, and reviewed a psychiatric evaluation from Nasreen Dar, M.D., a psychiatrist in Princeton, West Virginia, who formed the impression that Ms. Lawson suffered from major depressive disorder (moderately severe), alcoholism, and pathological gambling. (Id. at 628-30.) The appeal file was first reviewed by Laura Mininni, a registered nurse who concluded that Ms. Lawson was not disabled, and then reviewed by Janice Zimmerman, a psychologist, who found that there was "insufficient evidence of a serious psychiatric

7

condition reaching the level of impairment or the intensity of care expected in the context of a serious psychiatric condition based upon available medical documentation." (Id. at 572, 421.) The final review was conducted by Ronald Tolchin, an independent physician, who opined that "it is unclear if the claimant's poor tolerance for work may be on the basis of psychological issues." (Id. at 397-98.) Accordingly, UNUM denied Ms. Lawson's appeal on May 5, 2006. (Id. at 382-86.)

    Ms. Lawson responded to the denial of her appeal by filing the instant action on April 30, 2007, seeking a declaration that UNUM owes her first tier, own occupation benefits, due continuously from February 9, 2005, interest, and attorney's fees. (Doc. No. 1.) UNUM filed a motion for summary judgment contending that its benefit determination is supported by substantial evidence and that the decision making process was fair and principled. (Doc. No. 13.) Ms. Lawson responded by filing a cross motion for summary judgment arguing that UNUM's benefit determination was not supported by substantial evidence, but rather that the substantial evidence supports an award of benefits based principally upon a psychological disability. (Doc. No. 15). To this contention UNUM responded in opposition arguing that Ms. Lawson was not continuously disabled throughout the entire elimination period and therefore she is not considered to suffer from a psychological disability as defined by the

8

Policy. (Doc. No. 18.) No further replies or responses were filed within the time permitted by the Local Rules of Civil Procedure. Accordingly, the motions are ripe for adjudication.

**II. Standard of Review**

A motion for summary judgment may be granted when there are no genuine issues of material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his case and does not make, after adequate time for discovery, a showing sufficient to establish that element. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In reviewing an ERISA claim for the denial of benefits, the court must apply a de novo standard unless the benefit plan provides the plan administrator or fiduciary with the discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the Plan provides the plan administrator with discretionary authority, the court applies an "abuse of discretion" standard, and will not disturb

the denial of benefits if the decision is objectively reasonable and based upon substantial evidence. <u>Firestone</u>, 489 U.S. at 111; <u>Ellis v. Metro Life Ins. Co.</u>, 126 F.3d 228, 232-35 (4th Cir. 1997) (explaining that the quantum of evidence necessary to qualify as "substantial" is not great; it must be more than a scintilla, but can be less than a preponderance); <u>see also</u> <u>Brogan v. Holland</u>, 105 F.3d 158, 161 (4th Cir. 1997) (explaining that a decision is reasonable if it "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.").

Here, it is apparent that Plan documents give UNUM "discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the Summary of Benefits." (U.A.C.L. at 1190) Consequently, the court need only determine whether UNUM's denial of benefits was reasoned, principled, and based on substantial evidence.[2]

### III. Analysis

Ms. Lawson's sole argument on summary judgment is that UNUM's decision was not reasoned, principled, and based on substantial evidence. (Doc. No. 16.) Particularly, she contends that "the substantial evidence supports an award of benefits

---

[2] The parties do not dispute the standard of review the court must apply to defendant's denial of benefits. (Doc. No. 14 at 13; Doc. No. 16 at 5-6.)

based upon, principally, a psychological disability."[3] (Id. at 6.) This court disagrees.

Although UNUM recognized that the myriad of psychoactive drugs frequently prescribed by Ms. Lawson's treating physicians between February 9, 2005, and May 2, 2005, indicated that she may have been "experiencing symptoms affecting her ability to function," UNUM denied the portion of Ms. Lawson's claim for benefits that was based on a psychological disorder on the ground that she failed to present medical evidence demonstrating that the alleged psychological disorder caused her to be continuously disabled from February 9, 2005, to August 8, 2005. (U.A.C.L. at 382-86, 653.)

Specifically, UNUM relied on the fact that Ms. Lawson failed to seek psychiatric treatment upon referral, received only limited medical treatment from May 2, 2005, to August 8, 2005, remained on steady treatment with Prozac, and according to the treatment notes of Dr. Bird, "appear[ed] in no acute distress"

---

[3] Ms. Lawson presented no argument in regard to her physical disability claim. Nevertheless, the court has examined her claim of physical disability and UNUM's review thereof. The court finds that UNUM's denial of Ms. Lawson's claim of physical disability is reasoned, principled, and supported by the substantial evidence where it was the overall assessment of five UNUM health care professionals and two independent physicians that Ms. Lawson could perform the duties of her job as a telephone operator with minor restrictions that could be accommodated. The court was particularly persuaded by the MRI results of February 27, 2006, which, according to Ronald B. Tolchin, D.O., showed "very little arthritis" and "a relatively normal cervical spine." (U.A.C.L. at 438.)

and "has been doing fairly stable right now." (Id.) Moreover, it was the opinion of Jana G. Zimmerman, Ph.D, an UNUM clinical neuro-psychologist, that "there was insufficient evidence of a serious psychiatric condition that reached the level of impairment or the intensity of care expected in the context of a serious psychiatric condition" (id. at 421), and the opinion of Ronald B. Tolchin, D.O., an independent physician, that "[i]t is unclear if the claimant's poor tolerance for work may be on the basis of psychological issues" (id. at 397-98).

Ms. Lawson now contends that the opinion of Nareen Dar, M.D., who on January 23, 2006, diagnosed Ms. Lawson with Major Depressive Disorder (moderate severity) and opined that she was unable to perform any gainful employment, demonstrates that she must have been disabled between May 2, 2005, and August 8, 2005. (Doc. No. 16.) UNUM responded in opposition arguing that not even Dr. Dar, himself, could say whether Ms. Lawson had suffered from that disorder from May 2, 2005, to August 8, 2005, as he had not treated her during that time frame. (U.A.C.L. at 628-30.)

This court declines Ms. Lawson's invitation to draw such an inference of disability. The language of the Plan clearly requires continuous disability throughout the one hundred and eighty day elimination period. (Id. at 1086.) In Butts v. Continental Cas. Co., 357 F.3d 835, 836-37 (8th Cir. 2004), the Eighth Circuit upheld a district court's finding that the

12

plaintiff had not been continuously disabled during the one hundred and eighty day elimination period.  The medical evidence had indicated that the plaintiff was not disabled during the terminal months of the elimination period, but that immediately after the elimination period ended the plaintiff's condition took a turn for the worse.  Id. at 839.  The plaintiff argued that since she was obviously disabled during the first part of the elimination period and then obviously disabled immediately after the elimination period expired, the court should find her to have been continuously disabled for the entire elimination period. Id.  The court rejected the argument and declined to draw such an inference of disability.  Id.

Accordingly, the court finds that UNUM's denial of benefits was reasoned, principled, and based on substantial evidence.

**IV. Conclusion**

For the aforementioned reasons, the court hereby **GRANTS** defendant's motion for summary judgment (Doc. No. 13), **GRANTS** plaintiff's motion to extend filing deadline (Doc. No. 17), **DENIES** plaintiff's motion for summary judgment (Doc. No. 15), and **DIRECTS** the Clerk to dismiss this matter from the active docket of the court.  A separate Judgment Order will be entered contemporaneously with this Memorandum Opinion implementing the court's decision.

The Clerk is further directed to mail a copy of this Memorandum Opinion to all counsel of record.

It is **SO ORDERED** this 30th day of May, 2008.

ENTER:

David A. Faber
United States District Judge